**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Developer Finance Corporation
and Prescott Orchards Land
Development, LLC

    v.                                          Civil No. 10-cv-462-LM
                                              Opinion No. 2012 DNH 050
Chicago Title Insurance Company


**O R D E R**

Prescott Orchards Land Development, LLC ("Prescott"), seeks a declaratory judgment that it is entitled to coverage under an owner's policy of title insurance issued to it by Chicago Title Insurance Company ("Chicago Title").[1]  Plaintiffs initially sued in two counts, but in an endorsed order dated January 3, 2012, the court granted their motion for a voluntary nonsuit as to Count I, which pertained to two lender's policies.  Before the court are cross-motions for summary judgment on Count II, which pertains to the owner's policy.  For the reasons that follow, Chicago Title's motion for summary judgment is denied, and Prescott's motion is granted.

----

[1] Initially, Developer Finance Corporation and Prescott asked the court to declare who was the insured party under the policy.  That question appears to have been answered; Prescott is the insured party.  Accordingly, in the balance of this order, the court takes Prescott to be the sole plaintiff in this case.

## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,'"  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation,'"  Meuser, 564 F.3d at 515 (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)).  When ruling on a party's motion for summary judgment, a

trial court "constru[es] the record in the light most favorable
to the nonmovant and resolv[es] all reasonable inferences in
[that] party's favor."  Meuser, 564 F.3d at 515 (citing
Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38
(1st Cir. 2002)).

### Background

In January of 2007, Prescott purchased a subdivision in
Epping, New Hampshire, known as Prescott Orchards.  Prescott is
covered by a policy of owner's title insurance issued by Chicago
Title.  According to that policy, covered risks include:

> 2.   Any defect in or lien or encumbrance on the
>      Title.  This Covered Risk includes but is not
>      limited to insurance against loss from:
>
>      . . . .
>
>      (c)  Any encroachment, encumbrance, violation,
>           variation, or adverse circumstances
>           affecting the Title that would be disclosed
>           by an accurate and complete land survey of
>           the Land.

Def.'s Mot. Summ. J., Hansen Aff., Ex. D (doc. no. 16-6), at 2.
The policy also includes an exclusion from coverage referred to
as the "survey exception," which provides:

> This policy does not insure against loss or damage
> (and the Company will not pay costs, attorneys' fees
> or expenses) which arise by reason of the following:
>
> . . . .

> 2. Discrepancies, conflicts in boundary lines,
> shortages in area, encroachments, or any other facts
> which a correct survey would disclose, and which are
> not shown by the public records.

Id. at 4.  As for what constitutes a "public record," the policy

defines that term to mean

> [r]ecords established under state statutes at Date of
> Policy for the purpose of imparting constructive
> notice of matters relating to real property to
> purchasers for value and without Knowledge.

Id. at 12.

In November of 2009, the Town of Epping issued a cease and

desist order barring Prescott from engaging in construction

activities or site disturbances on two roadways and eight lots

within Prescott Orchards that are traversed by an ancient Class

VI roadway known as New Lane.  The Town vacated that order in

January of 2010.

In October of 2010, Prescott filed a notice of claim with

Chicago Title.  Prescott observed that while the cease and

desist order had been vacated, "the issue that formed the basis

for the Order has not been resolved."  Hansen Aff., Ex. G (doc.

no. 16-9), at 3.  In Prescott's view, that lack of resolution

leaves its "security and equity interests in the subdivision

. . . impaired because New Lane crosses a number of previously

developable lots, and [it] has incurred significant costs and

loss of opportunity due to the two month shut-down."  Id.

In October of 2011, Chicago Title denied Prescott's claim. In so doing, it referred to a subdivision plan prepared by Doucet Survey Inc. ("Doucet") that identified New Lane, but depicted it as lying outside the boundaries of Prescott Orchards.[2] Chicago Title then recited the survey exception and explained its denial of coverage:

> Even if a correct survey would reveal the presence of the New Lane/Road on the Property, its presence is not also "shown by the public records", and therefore the matter would be removed from coverage by the above-quoted item 2 of Schedule B.  The term "public records" as used in the Policy is defined in pertinent part as "[r]ecords established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge".   Under New Hampshire law, "[e]very deed . . . or other instrument which affects title to any interest in real estate [to be] effective as against bona fide purchasers for value" are those recorded in the Registry of Deeds of the county where the real estate is located.   RSA 477:3-a.  The Company's investigation has not revealed the presence of anything in the Registry of Deeds for Rockingham County revealing the presence of New Lane/Road on the Property.

Hansen Aff., Ex. H (doc. no. 16-10), at 3-4.

This action followed.  In the claim that remains, Prescott seeks a declaration that it is covered against losses resulting from the presence of New Lane within the boundaries of Prescott Orchards.

---

[2] In its complaint, Prescott alleges that Doucet "prepared a subsequent subdivision plan depicting New Lane running through at least five subdivision lots."  Compl. (doc. no. 1) ¶ 22.

**Discussion**

Both Chicago Title and Prescott have moved for summary
judgment.  Chicago Title has, in fact, moved for summary not
once but twice.  It filed its initial summary-judgment motion in
November of 2011.  Then, apparently in response to Prescott's
summary-judgment motion (but for no other reason the court can
discern), Chicago Title filed a second summary-judgment motion,
styled as a cross-motion for summary judgment.  That said, the
court turns to the two summary-judgment motions that are ripe
for decision.

A. Chicago Title's First Motion for Summary Judgment

In document no. 16, Chicago Title argues that it is
entitled to summary judgment because the undisputed factual
record demonstrates that it properly invoked the survey
exception in its denial of coverage.  This is the heart of
Chicago Title's argument:

> There is no dispute that plaintiffs' position is
> that if the Doucet survey had been correct, it would
> have disclosed the existence of New Lane within the
> confines of the Prescott Orchards Subdivision.
> Complaint, ¶¶ 18-22.  Accordingly, plaintiffs cannot
> now claim, for coverage purposes, that an accurate
> survey would not have disclosed the alleged existence
> of "New Lane," and/or that the New Lane is a matter of
> record within plaintiffs' chain of title.

6

Def.'s Mem. of Law (doc. no. 16-1), at 9 (footnote omitted, emphasis in the original).  As a preliminary matter, it is not at all clear why Chicago Title advances the idea that Prescott is claiming that an accurate survey would not have disclosed the presence of New Lane within Prescott Orchards.  The policy at issue expressly covers loss from "adverse circumstances affecting the Title that would be disclosed by an accurate and complete land survey."  Hansen Aff., Ex. D (doc. no. 16-6), at 2 (emphasis added).  Thus, Prescott has no reason to claim that an accurate survey would not have disclosed New Lane, and it does not do so.

More importantly, Prescott's acknowledgement that an accurate survey would have disclosed New Lane, without more, does not entitle Chicago Title to the benefit of the survey exception, which only bars coverage for claims based on "facts which a correct survey would disclose, and which are not shown by the public records."  Hansen Aff., Ex. D (doc. no. 16-6), at 4 (emphasis added).  In other words, to bear its burden of establishing a lack of coverage, see EnergyNorth Natural Gas, Inc. v. Century Indem. Co., 452 F.3d 44, 48 (1st Cir. 2006) (citing N.H. Rev. Stat. Ann. § 491:22-a); N. Sec. Ins. Co. v. Connors, 161 N.H. 645, 650 (2011), Chicago Title must prove that the public records, as defined by the policy, do not show that

New Lane runs across Prescott Orchards.[3]  Prescott's
acknowledgement that an accurate survey would have disclosed the
presence of New Lane in Prescott Orchards does not establish, as
Chicago Title seems to suggest, that New Lane is not a matter of
record in the Prescott Orchards chain of title.  Or, to use the
relevant policy language, Prescott's acknowledgement that an
accurate survey would have disclosed the presence of New Lane in
Prescott Orchards does not establish that New Lane's presence in
Prescott Orchards was not shown by the public records.

After citing a number of cases that describe the operation
of the survey exception, Chicago Title further elaborates its
argument:

> In this case, Plaintiffs contend that New Lane
> created a defect in title that was not a matter of
> public record and which would have been shown by an
> accurate survey by Doucet.  Under these circumstances,
> the survey exception plainly bars coverage under the
> Owners' Policy.  As indicated in Chicago Title's
> letter of October 31, 2011, Plaintiffs have not
> alleged and Chicago Title's investigation has not
> disclosed any deeds or other instruments affecting

---

[3] In one pleading, Chicago Title refers to Prescott
Orchards' "burden of proof to establish coverage," Def.'s Cross-
Mot. Summ. J. (doc. no. 35), at 7, and in one of its memoranda,
it refers to "Prescott Orchards' burden of establishing
coverage," Def.'s Mem. of Law (doc. no. 34-1), at 2.  However,
Chicago Title has cited at least two cases that stand for the
well-established proposition that in New Hampshire, the insurer
bears the burden of proving lack of coverage.  See Def.'s Mem.
of Law (doc. no. 16-1), at 4 (citing Northern Security, 161 N.H.
at 650; Philbrick v. Liberty Mut. Fire Ins. Co., 156 N.H. 389,
391 (2007).  To the extent Chicago Title contends that Prescott
has the burden to establish coverage, it is mistaken.

> title to property recorded in the Rockingham County
> Registry of Deeds showing New Lane passing over any
> portion of plaintiffs' property.  Hansen Aff., Ex. H.

Id. at 12.  Again, Chicago Title appears to misconstrue

Prescott's claim.  Prescott is most assuredly not contending

that the path of New Lane across Prescott Orchards "was not a

matter of public record."  Id.  Such an argument would defeat

coverage, which is available only if the adverse fact on which

the claim is based would be disclosed by an accurate survey and

is shown by the public records.  In other words, Prescott

contends that the path of New Lane across Prescott Orchards was

shown in the public records, which would bar Chicago Title from

invoking the survey exception.

Beyond that, Chicago Title has not established, as an

undisputed fact, that New Lane's path across Prescott Orchards

is not shown by the public records.  Prescott's failure to

allege facts or identify documents indicating that New Lane is

not shown by the public records is of no moment, in that it is

an insurer's burden to demonstrate a lack of coverage, not the

insured's burden to prove that it is entitled to coverage, or

that an exclusion from coverage does not apply.  See

EnergyNorth, 452 F.3d at 48; Northern Security, 161 N.H. at 650;

Philbrick, 156 N.H. at 391.  Similarly, Chicago Title's

reference to its letter denying coverage, which describes its

investigation as failing to turn up any deeds in the Rockingham County registry placing New Lane in Prescott Orchards, is insufficient to establish a lack of notice in public records, for purposes of summary judgment.  That letter is evidence of Chicago Title's reasons for denying coverage,[4] and may be evidence of what Chicago Title's investigation revealed.[5]  But those are factual matters separate from the dispositive question here, which is whether the path of New Lane across Prescott Orchards is shown by the public records.

Chicago Title has not produced undisputed evidence establishing that the path of New Lane across Prescott Orchards is not shown by the public records, which is necessary for the survey exception to apply.  It could have done so by, for example, producing an affidavit from someone who had researched the chain of title for Prescott Orchards and found no mention of New Lane in any of the relevant deeds.  But, Chicago Title has produced no such evidence.

_____

[4] That Chicago Title can prove what it told Prescott is not proof of the validity of what it said.

[5] Without disclosing the nature of its investigation, Chicago Title's statement about what that investigation did not reveal is not very revealing.  A comprehensive search by an experienced deed researcher that comes up empty is different from a cursory search by a person with no training or experience in deed research.  Moreover, there is no indication that the author of the denial letter actually conducted Chicago Title's investigation, which calls into question his competence to testify as to its results.

In its reply to Prescott's objection to its motion for summary judgment, Chicago Title labels as "specious" Prescott's contention "that expert testimony is required to determine whether a record is a 'Public Record' as defined in the Owner's Policy." Def.'s Reply (doc. no. 22), at 6.  The problem is, Prescott makes no such argument.  Rather, it argues that Chicago Title needs expert testimony to prove the fact that New Lane's path across Prescott Orchards is not shown by the public records.  Chicago Title certainly bears the burden of proving that fact, and might need expert testimony to do so.  But, because Chicago Title misunderstood Prescott's argument, it did not even address it.  Rather, it cites a number of cases that stand for the unremarkable – and undisputed – proposition that the determination of whether a particular document qualifies as a "public record," as that term is defined in an insurance policy, is a question of law for the court.[6]  At this point, to rule on Chicago Title's motion for summary judgment, it is enough to say that summary judgment is not warranted because Chicago Title has not produced undisputed evidence that the path

---

[6] See, e.g., Miller v. Title Ins. Co. of Minn., 987 P.2d 1151, 1153-54 (Mont. 1999); First Am. Title Ins. Co. v. J.B. Ranch, Inc., 966 P.2d 834, 837-38 (Utah 1998); Upton v. Miss. Valley Title Ins. Co., 469 So. 2d 548, 554-56 (Ala. 1985); Contini v. W. Title Ins. Co., 115 Cal. Rptr. 257, 260 (Cal. Dist. Ct. App. 1974); Stearns v. Title Ins. & Trust Co., 95 Cal. Rptr. 682, 686-87 (Cal. Dist. Ct. App. 1971).

of New Lane across Prescott Orchards is not shown by the public
records.

### B. Prescott's Motion for Summary Judgment

In document no. 32, Prescott argues that it is entitled to
summary judgment because the undisputed factual record
demonstrates that New Lane is an encumbrance[7] on the title of
Prescott Orchards that: (1) would be disclosed by an accurate
land survey; and (2) is shown by the public records.  In support
of that argument, Prescott contends that its expert, John
Myhaver, has produced a report that "notes specific instances of
the existence of New Lane in the public records of New
Hampshire, including <u>deeds</u>, recorded plats, and Town of Epping
Warrant articles."  Pl.'s Mem. of Law (doc. no. 32-1), at 4
(emphasis added).  Chicago Title objects.

Chicago Title's objection, document no. 34, mentions a
"Memorandum of Law in Support of Objection to Motion for Summary
Judgment as to Liability Under Count II," but no such document
appears in the docket.  Rather, the docket entry labeled in ECF
as "Memorandum of Law In Support of Objection" opens a document,

---

[7] Chicago Title argues at some length that Prescott
erroneously characterizes New Lane as an encumbrance.  Rather
than wading into that issue, the court simply notes that under
the policy, covered risks include losses from "adverse
circumstances affecting the Title."  Whether or not New Lane
fits some formal definition of an encumbrance, it surely is an
adverse circumstance that has affected Prescott Orchards' title.

no. 34-1, that bears the caption "Memorandum of Law in Support
of Cross-Motion for Summary Judgment as to Liability Under Count
II."  That same document was also submitted, as document no. 35-
1, in support of Chicago Title's second motion for summary
judgment.  Whether Chicago Title filed the same document twice,
by accident, the court cannot say.  In any event, the court can
only review the documents that have been submitted to it and
operates under the assumption that the documents Chicago Title
submitted are the documents it intended to submit.

Turning to those documents, neither Chicago Title's
objection to Prescott's motion for summary judgment nor the
document submitted in support thereof "incorporate[s] a short
and concise statement of material facts, supported by
appropriate record citations, as to which [Chicago Title]
contends a genuine dispute exists so as to require a trial," LR
7.2(b)(2).  Moreover, Chicago Title has produced no facts to
counter those produced by Prescott.[8]  Rather, as best the court
can tell, Chicago Title contends that "the Myhaver Report
affirmatively demonstrates that the existence of New Lane
allegedly crossing the Prescott Orchards subdivision is not

---

[8] That is, of course, Chicago Title's prerogative.  It may
oppose Prescott's motion either by producing evidence that runs
counter to Prescott's evidence, or by pointing out deficiencies
in Prescott's evidence.  See Fed. R. Civ. P. 56(c).

shown in any 'Public Record,' as defined by the Owner's Policy,"
doc. no. 34-1, at 2, and further contends that "[t]he undisputed
fact that New Lane is not shown in the 'Public Records' in and
of itself negates coverage under the Owner's Policy," id.

Myhaver is a licensed land surveyor whom Prescott engaged
to investigate "'The Orchards' Subdivision, prepared by Doucet
Survey, and the implications of New Lane's status in reference
to the Subdivision." Pl.'s Mot. Summ. J., Ex. 2A (doc. no. 32-
3), at 3. Among other things, Myhaver reviewed "the
comprehensive Doucet research/survey file." Id. According to
his report, Myhaver discovered:

> Deed research and title sketches of parcels that now
> include "The Orchards" subdivision prior to 1871 ±
> referred to the Rangeway or "2nd Rangeway".
> Conveyances after that time started referring to it as
> "New Lane" or "the New Lane" rather than specifying
> the Rangeway. Deeds also reserved paths or ways
> (presumably private) to access New Lane.[9]

Id. at 4. Myhaver also reported:

> The Doucet subdivision does state under Note #11 that
> the "parcels may be subject to any/or [be] in benefit
> of other rights or restrictions, including the rights
> of others or use of ancient 'range roads[']". This
> indicates that they reviewed the older calls for the
> rangeway in the older deeds to the parcels now
> involved in the subdivision.

---

[9] Given Prescott's production of the Myhaver report, which
mentions deeds referring to New Lane, the court has trouble
understanding Chicago Title's reference to "[t]he undisputed
fact that New Lane is not shown in the 'Public Records,'" doc.
no. 34-1, at 2.

Id.  Thus, Prescott has produced evidence that New Lane's path across Prescott Orchards was shown in the public records, specifically, in deeds in the chains of title of some of the properties that were incorporated into Prescott Orchards.  That evidence, if presented at trial, and accepted by the factfinder, would necessarily render Chicago Title unable to establish that the path of New Lane across Prescott Orchards was "not shown by the public records," Hansen Aff., Ex. D (doc. no. 16-6), at 2 (emphasis added).  Absent proof of that fact, Chicago Title cannot carry its burden of proving that Prescott's claim is not covered by the insurance policy at issue because it is barred by the survey exception.

In response to Prescott's summary-judgment motion, Chicago Title has produced no evidence that New Lane is not mentioned in the Prescott Orchards chain of title, which would be enough to defeat Prescott's summary-judgment motion.  Rather, Chicago Title seeks to create a triable issue by arguing that the Myhaver report supports its position rather than Prescott's.  But, nowhere in either its objection, document no. 34, or the document submitted in support thereof, document no. 34-1, does Chicago Title mention one single fact in the Myhaver report that either undermines Prescott's argument or supports its own

position.[10]  When ruling on a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  In the interest of giving every possible benefit to the nonmovant, see Meuser, 564 F.3d at 515, the court has examined Chicago Title's other pleadings, in an attempt to learn exactly what from the Myhaver report, in Chicago Title's view, supports its position.  That search proved fruitless.

In Chicago Title's reply to Prescott's objection to its first summary-judgment motion, document no. 22, Chicago Title mentions Myhaver's references to: (1) documents pertaining to the Town's closure of New Lane; and (2) a 1970 warrant article. See id. at 2-3.  Warrant articles and other Town documents pertaining to the closure of New Lane, however, are not public records under the policy, which limits that term to "[r]ecords established under state statutes . . . for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge," Hansen Aff., Ex. D. (doc. no. 16-6), at 12.  While, at first blush,

---

[10] Again, the court recognizes the possibility that Chicago Title mistakenly submitted the same document as both no. 34-1 and no. 35-1, and failed to submit the document it intended to submit in support of document no. 34.  But, of course, it is Chicago Title's responsibility to submit the documents it intends to submit, not the court's responsibility to verify that it has done so.

warrant articles and Town documents would appear to be public records, Chicago Title itself, in the letter denying coverage, defines "public records" in terms of RSA 477:3-a, which pertains to the recording of deeds, conveyances of real estate, court orders, and other instruments affecting title to interests in real estate.  Here, Chicago Title does not argue that any of the warrant articles or other Town documents it points to in the Myhaver report were ever recorded in the Registry of Deeds or even qualify as documents affecting title subject to recording under RSA 477:3-a.

Chicago Title also asserts that "Myhaver . . . was unable to confirm that New Lane had been properly laid out by the Town from Prescott Road to Dearborn Road from any of the records he searched."  Def.'s Reply (doc. no. 22), at 3 (emphasis in the original).  But, whether Myhaver was able to find documentation that New Lane was properly laid out says nothing about whether New Lane was mentioned in deeds or other public records, which is the fact necessary to determine whether the survey exception applies.

Later on in its reply brief, Chicago Title develops its argument:

> Not surprisingly, plaintiffs cannot identify, through Myhaver's report or otherwise, any deed, court order "or other instrument affecting title" recorded in the Rockingham County Registry of Deeds that

> discloses the existence of New Lane crossing a single
> lot in the Orchards subdivision.  The vague reference
> in Myhaver's report cited by plaintiffs at p. 18 of
> their Memorandum to "deed research and title sketches
> of parcels that now include the Orchard subdivision
> prior to 1871I" [which] referred to the Rangeway or
> "2d Rangeway" is insufficient, as a matter of law, to
> provide constructive notice of the existence of New
> Road crossing any lots within the subdivision,
> particularly where Myhaver concludes that there is no
> record evidence of a layout of New Lane by "any of the
> four accepted methods of creating a public road" that
> is consistent with the Town's record of closure.
> Without evidence of the layout of New Road through the
> Orchard subdivision or other "deed or conveyance, a
> court order, or other instrument affecting title"
> recorded in the "Public Records," pursuant to RSA
> 477:3-a, as required by the Owners' Policy, plaintiffs
> have raised no genuine issue of material fact with
> respect to the applicability of the survey exception.
> Accordingly, Chicago Title properly denied coverage
> and is entitled to judgment in its favor as a matter
> of law.

Def.'s Reply (doc. no 22), at 7-8.  Chicago Title's statement

that Myhaver's "vague" reference to Doucet's deed research "is

insufficient, as a matter of law, to provide constructive notice

of the existence of New Road crossing any lots within the

subdivision," is confusing, at best.  Prescott is not required

to produce evidence that gives constructive notice of anything

to anybody.  Rather, Prescott sought to produce evidence of

public records that give constructive notice of the existence of

New Lane within Prescott Orchards to purchasers for value.

Chicago Title, in turn, must overcome that evidence before it

may lawfully deny coverage.  See EnergyNorth, 452 F.3d at 48;

Northern Security, 161 N.H. at 650; Philbrick, 156 N.H. at 391.

While Chicago Title asserts that Myhaver's report is
insufficient as a matter of law, it offers no argument or
authority to back up that assertion and no basis for the court
to so rule.  Prescott has produced a report saying that deeds in
the Prescott Orchards chain of title mention New Lane.  Deeds
are public records under the policy.  Thus, Prescott has
produced evidence that the path of New Lane across Prescott
Orchards is shown by the public records.

To be sure, Prescott could have produced stronger evidence,
such as an actual deed.  But, after Prescott produced evidence –
no matter how weak or strong – the burden shifted to Chicago
Title to create a triable issue by: (1) pointing out a
contradiction in the evidence Prescott produced;[11] or (2)
producing conflicting evidence of its own.  It has done neither.

Because Prescott has produced undisputed evidence that the
presence of New Lane in Prescott Orchards is an adverse
circumstance affecting the title to the property that would be
disclosed by an accurate survey and that is shown by the public

---

[11] A lack of evidence that New Lane was properly laid out
does not contradict evidence that the presence of New Lane in
Prescott Orchards is shown in one or more deeds.  Whether a
roadway was lawfully laid out says nothing about whether that
roadway is mentioned in the deeds to properties adjacent to it.

records, i.e., deeds in the chain of title to Prescott Orchards, Prescott is entitled to summary judgment on Count II. That is, Prescott is entitled to a declaration that any losses resulting from the presence of New Lane in Prescott Orchards are covered by the policy of title insurance issued by Chicago Title.

Finally, based on a footnote in Chicago Title's second motion for summary judgment, in which Chicago Title seems that it might be challenging the propriety of including the Myhaver report in the summary judgment record, see doc. no. 35, at 2 n.1, the court takes the unusual step of addressing, preemptively, any objection Chicago Title might raise to the court's consideration of the Myhaver report.

Prescott initially submitted the Myhaver report in support of its objection to Chicago Title's first motion for summary judgment. In its reply brief, Chicago Title did not challenge the inclusion of the Myhaver report in the summary judgment record and, arguably, relied on one of Myhaver's conclusions to support its own position. See Def.'s Reply (doc. no. 22), at 8. Prescott submitted the Myhaver report a second time, in support of its own summary-judgment motion. Again, Chicago Title did not object to including that report in the summary-judgment record. To the contrary, in the document submitted in support of its objection to Prescott's motion for summary judgment,

which was also submitted in support of its cross-motion for

summary judgment, Chicago Title argues that "the Myhaver Report

affirmatively demonstrates that the existence of New Lane

allegedly crossing the Prescott Orchards subdivision is not

shown in any 'Public Record,' as defined by the Owner's Policy."

Doc. no. 35-1, at 2 (emphasis added).  In other words, Chicago

Title, which produced no evidence in support of its objection to

Prescott's summary-judgment motion, did not identify a flaw in

the Myhaver report, which, theoretically, could have been

sufficient to stave off summary judgment for Prescott, see Fed.

R. Civ. P. 56(c)(1)(B).  Rather, Chicago Title relied on the

Myhaver report to carry its burden of proving a lack of coverage

by showing that the survey exception applies.

Chicago Title's first apparent objection to the Myhaver

report appears in its second summary-judgment motion:

> The Myhaver report was not accompanied by an
> affidavit or otherwise authenticated by plaintiffs,
> but Chicago Title does not dispute that it was the
> "preliminary report" of Myhaver disclosed by
> plaintiffs in this case.  The Myhaver Report is not
> only unauthenticated, it is, when offered by
> plaintiffs in support of their claim, inadmissible
> hearsay.  See, e.g., LaFlamboy v. Landek, 587 F. Supp.
> 2d 914, 922 (N.D. Ill. 2008), citing Haywood v. Lucent
> Techs., Inc., 323 F.3d 524, 533 (7th Cir. 2003)
> (excluding on summary judgment an expert report that
> was introduced (without any supporting affidavit

verifying its authenticity.")); <u>see also</u>, <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990).[12] Def.'s Cross-Motion for Summ. J. (doc. no. 35), at 2 n.1.  As a preliminary matter, the court has little difficulty concluding that Chicago Title waived any objection to the inclusion of the Myhaver report in the summary judgment record by twice letting it pass without objection and by relying on that document to meet its own burden of proving a lack of coverage.

Moreover, even if Chicago Title's objection to the Myhaver report were properly before the court, that objection, to the extent the court can understand it, is meritless.  First, Chicago Title criticizes the report as being unauthenticated. Indeed, Prescott did not introduce the Myhaver report through an affidavit authenticating it, and it should have.  But, after noting the lack of authentication, Chicago Title further indicated that it did "not dispute that [the report Prescott submitted] was the 'preliminary report' of Myhaver disclosed by plaintiffs in this case," Def.'s Cross-Mot. Summ. J. (doc. no. 35), at 2 n.1, which certainly sounds like a concession as to

---

[12] Notwithstanding the impression given by the placement of the citations to LaFlamboy and Garside, neither of those cases support the proposition that the Myhaver report is hearsay. Rather, LaFlamboy states that expert reports should be authenticated, <u>see</u> 587 F. Supp. 2d at 922.  And Garside holds that "[a] third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill," 895 F.2d at 50 (citations omitted), a rule of law that, obviously, has no application in this case.

the authenticity of the Myhaver report.  So, that objection goes
nowhere.  Even more difficult to decipher is Chicago Title's
characterization of the Myhaver report as hearsay.  The report
does not say what other people said, which would be hearsay; it
reports what Myhaver found when he examined various documents
that Doucet generated and relied on when it prepared the
subdivision plan for Prescott Orchards.  And, importantly,
Prescott does not rely on Myhaver's report to establish the
location of New Lane, which might raise hearsay problems;
Prescott relies on Myhaver's report to show that the presence of
New Lane in Prescott Orchards was shown in the public records,
specifically deeds in the Prescott Orchards chain of title.

    In sum, while Prescott should have properly authenticated
the Myhaver report, Chicago Title has both waived any objection
and conceded the report's authenticity.  Moreover,
notwithstanding any purported deficiencies in the report,
Chicago Title has affirmatively relied upon it in its
unsuccessful attempt to carry its burden of proving that
Prescott is not covered by the policy.  Accordingly, Prescott's
reliance on the Myhaver report does not preclude the court from
granting summary judgment in favor of Prescott.

**Conclusion**

For the reasons described above, Chicago Title's motion for summary judgment, document no. 16, is denied, and Prescott's motion for summary judgment, document no. 32, is granted.  In light of Prescott's entitlement to summary judgment on Count II, Chicago Title's cross-motion for summary judgment, document no. 35, is denied as moot, as is document no. 37.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


March 6, 2012

cc:   Conrad WP Cascadden, Esq.
      Paul R. Kfoury, Sr., Esq.
      Martha Van Oot, Esq.